IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| ROBERT SHARP, on behalf of himself and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 2:18-cv-02325-cgc |
| v. | ) ) | |
| TECHNICOLOR VIDEOCASSETTE OF MICHIGAN, INC., and STAFFING SOLUTIONS SOUTHEAST, INC., | ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |

_____

ORDER DENYING DEFENDANT TECHNICOLOR VIDEOCASSETTE OF MICHIGAN, INC.'S RENEWED PARTIAL MOTION TO DISMISS
_____

Before the Court is Technicolor Videocassette of Michigan, Inc.'s ("Technicolor") renewed partial motion to dismiss Counts 1 and 2 of the plaintiff's Third Amended Complaint. (Def. Mot., ECF No. 56.) The plaintiff, Robert Sharp, filed a timely response in opposition to Technicolor's motion, (ECF No. 66), to which Technicolor filed a timely reply, (ECF No. 71). The parties have consented to the jurisdiction of the United States Magistrate Judge. (ECF No. 45.) For the reasons set forth below, Technicolor's motion to dismiss is denied.

I. BACKGROUND

After Sharp had worked for Technicolor and Staffing Solutions Southeast, Inc. ("Staffing Solutions") for six years, (TAC ¶ 34, ECF No. 50), Technicolor offered him full time employment, subject to a background check, (*Id.* at ¶ 35). Prior to running the background

1

check, Technicolor required Sharp to complete a form titled "Applicant Release – Authorization for Background Screening Form" ("Applicant Release").[1]  (*Id.* at ¶ 36.)  Upon receipt of the background check, Sharp's full time employment offer was retracted and he was terminated from his existing position.  (*Id.* at ¶ 40.)

On March 15, 2018, Robert Sharp filed a state court class action, *Sharp v. Technicolor USA, Inc.*, No. 18C661, against Technicolor and Manpowers US, Inc. in Davidson County Circuit Court pursuant to the Fair Credit Reporting Act of 1970 ("FCRA"), 15 U.S.C. § 1681, *et seq.*  (Notice of Removal 5, ECF No. 1-1.)  On April 12, 2018, Sharp amended his complaint to name Pro Logistics, LLC instead of Manpowers US, Inc.  (Notice of Removal 55, ECF No. 1-1).  On April 18, 2018, Technicolor filed a notice of removal from Davidson County Circuit Court to the United States District Court for the Middle District of Tennessee, (Notice of Removal, ECF No. 1.), which resulted in the parties agreeing to transfer the case to the United States District Court for the Western District of Tennessee, (ECF No. 9).  On June 12, 2018, Sharp was able to identify the staffing agency Technicolor used in its hiring process as Staffing Solutions, who remains a named party in this suit. (Pl.'s Second Am. Compl., ECF No. 18.)

On August 13, 2018, Sharp filed his Third Amended Complaint.  (Third Am. Compl., ECF No. 50.)  In the Third Amended Complaint, Sharp alleges that Technicolor willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring a consumer report on Sharp without complying with the FCRA's disclosure and authorization requirements.  (*Id.* at ¶ 27, ECF No. 50.)  Specifically, in Count 1, Sharp asserts that Technicolor violated 15 U.S.C. §

---

[1] As Sharp notes in his response to Technicolor's motion to dismiss, Technicolor repeatedly refers to the form it provided Sharp with prior to obtaining his consumer report as the "Disclosure & Authorization Form" even though the form was actually titled "Applicant Release – Authorization for Background Screening."  (Pl. Response 1 n.1, ECF No. 66.)  Accordingly, the court will refer to the document as the "Applicant Release," as no document titled "Disclosure & Authorization Form" is part of the record.

1681b(b)(2)(A)(i) by procuring a consumer report on Sharp without first disclosing its intent to do so in a document consisting solely of the disclosure. (*Id.* at ¶ 5.) In Count 2, Sharp contends that Technicolor violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring a consumer report on Sharp without Sharp's authorization as is required under the FCRA. (*Id.* at ¶ 6.) Technicolor, however, asserts that the Applicant Release it provided to Sharp does not violate the FCRA because (1) the language included in the form is expressly permitted under the FCRA, (Def. Mot. 5, ECF No. 56); (2) any extraneous information contained in the document outside of the disclosure does not benefit Technicolor and thus is in compliance with the FCRA, (*Id.* at 8); (3) the form does not contain a waiver, (*Id.* at 7); and (4) the form contains all of the language required under 15 U.S.C. § 1681b(b)(2)(A), (*Id.* at 12). For the reasons that follow, Technicolor's motion to dismiss is denied.

## II. ANALYSIS

A. <u>Standard of Review</u>

In assessing whether Sharp's complaint states a claim for which relief may be granted, the court applies the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). To survive a Rule 12(b)(6) motion to dismiss following *Iqbal* and *Twombly*, a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to the plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

B.   FCRA's Stand-Alone Disclosure Requirement

"The FCRA, 15 U.S.C. § 1681 et seq., . . . is designed to protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which 'utilize correct, relevant and up-to-date information in a confidential and responsible manner.'" *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 843–44 (6th Cir. 2004)(quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). "The FCRA imposes distinct obligations on three types of entities: (1) consumer reporting agencies[;] (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Id.* at 844 (citing *Carney v. Experian Info. Solutions*, Inc., 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999)). Sharp purports to hold Technicolor liable as a user of consumer reports. (Third Am. Compl., ECF 50.)

Under the FCRA, an employer may only procure a consumer report for employment purposes if the employer provides "a clear and conspicuous disclosure . . . made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i); *see also Doe v. Sentech Employment Servs., Inc.*, 186 F. Supp. 3d 732, 737 (E.D. Mich. 2016)(discussing the stand-alone disclosure requirement under the FCRA). A consumer report is used for "employment purposes" if it is "used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h). Before procuring a consumer report for employment purposes, the employer must provide the consumer with a "clear and conspicuous disclosure . . . made in writing . . . in a document that consists solely of the disclosure" that

explains to the consumer that this consumer report may be used for employment purposes. *Id.* § 1681b(b)(2)(A)(i).

In addition to the disclosure, the employer must obtain a written document containing the consumer's authorization before the employer may obtain a consumer report for employment purposes. *Id.* § 1681b(b)(2)(A)(ii). This written document may include the employer's disclosure and the potential employee's consumer-report authorization. *Id.* § 1681b(b)(2)(A)(i), (ii). These disclosure-and-authorization requirements and restrictions under the FCRA are often referred to as the "standalone disclosure requirement." *See, e.g.*, *Doe*, 186 F. Supp. 3d at 737 (E.D. Mich. 2016)(discussing the stand-alone disclosure requirement under the FCRA); *LeGrand v. IntelliCorp Records, Inc.*, No. 1:15 CV 2091, 2017 WL 733664, at *2 (N.D. Ohio Feb. 24, 2017), *order amended on reconsideration,* No. 1:15 CV 2091, 2017 WL 2313865 (N.D. Ohio May 26, 2017)(reviewing whether a plaintiff's allegations sufficiently pleads claims against the defendant under the standalone disclosure requirement); *Tauriainen v. Great Lakes Wine & Spirits, LLC*, No. 2:15-CV-12789, 2015 WL 12698403, at *2 (E.D. Mich. Dec. 31, 2015)(explaining the purpose of the standalone disclosure requirement).

Technicolor's position that the language included in its Applicant Release is expressly permitted under the FCRA is without merit. (Def. Mot. 5, ECF No. 56.) In this case, the language immediately following the title on the Applicant Release that Technicolor provided to Sharp reads as follows:

> I, _____, hereby authorize Technicolor and or its Agents to conduct a comprehensive review of my background for the purposes of employment. I understand this background check may include inquiry into my references, character, past employment/education, credit history, criminal history, motor vehicle reports and other public records. If denied employment based upon the information gained from sources checked, I understand I have the right to review this information and correct any errors. Technicolor does not discriminate against applicants or use this information for illegal purposes.

5

(Pl. Resp. 2, ECF No. 66.)[2] Following this paragraph are a series of blank spaces asking the applicant to provide information necessary for obtaining a consumer report.

The plain language of FCRA states that when an employer "us[es] a consumer report for employment purposes, *before taking any adverse action based in whole or in part on the report*, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under [the FCRA]." 15 U.S.C. § 1681b(3)(A)(emphasis added). This statutory requirement plainly establishes that a consumer is permitted to receive a copy of the consumer report used for employment purposes *prior* to adverse action being taken, which is in direct conflict with the concluding phrase in Technicolor's Applicant Release form which states: "If denied employment based upon the information gained from sources checked, I understand I have the right to review this information and correct any errors." (Pl. Resp. 2, ECF No. 66.) This language in Technicolor's Applicant Release implies that a consumer does not have the right to review his or her consumer report until *after* adverse action has been taken, which is wholly contradictory to the protections provided to consumers under the FCRA. § 1681b(b)(3)(A); *see also Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 319–20 (3d Cir. 2018), *reh'g denied* (Oct. 5, 2018)("In sum, § 1681b(b)(3) confers on the individual a right to receive, before adverse action is taken, a copy of his or her consumer report (regardless of its accuracy) and a notice of his or her rights. This

---

[2] Although the Third Amended Complaint refers to "Exhibit A" as an attachment to the complaint containing the document at issue in this case, (Third Am. Compl. 8, ECF No. 50), and Technicolor refers to the same "Exhibit A" from the Third Amended Complaint, (Def. Mot. 4, ECF No. 56-1), no such attachment exists. Rather, the document in question was only attached in its entirety to Technicolor's first motion to dismiss as "Exhibit 1." (ECF No. 39-1).

right permits individuals to know beforehand when their consumer reports might be used against them and creates the possibility for the consumer to respond to inaccurate or negative information — either in the current job application process, or going forward in other job applications.").

Technicolor's argument regarding the intent of the "extraneous information" is also without merit. As noted above, the "extraneous information" contained in the Applicant Release misconstrues an applicant's right to review his or her consumer report prior to an adverse employment action being taken against the applicant on the basis of a consumer report.

Finally, Technicolor's contention that it included all of the necessary language required under the FCRA does not, by itself, support its claim that Sharp failed to raise a viable claim within the meaning of Rule 12(b)(6). Although Technicolor correctly asserts that the FCRA permits the inclusion of a disclosure within the same document as an authorization, the court must still determine whether the disclosure and authorization language in the Applicant Release was sufficiently clear and conspicuous. § 1681b(b)(2)(A)(i)("A *clear and conspicuous* disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes."); *see also Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 695 (S.D. Ohio 2010)(discussing the "clear and conspicuous" analysis under § 1681b(b)(2)(A)(i)). While Technicolor's arguments may be appropriate for summary judgment review after a factual record has been developed, upon "constru[ing] the complaint in a light most favorable to the plaintiff" and "accept[ing] all factual

allegations as true" to determine whether they suggest an entitlement to relief, the court finds that Sharp's Third Amended Complaint plausibly states claims upon which relief can be granted under the FCRA.  *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

### III. CONCLUSION

For the foregoing reasons, Technicolor's motion to dismiss Counts 1 and 2 of Sharp's Third Amended Complaint is denied.

IT IS SO ORDERED this 10th day of January, 2019.

                                                s/Charmiane G. Claxton
                                                CHARMIANE G. CLAXTON
                                                UNITED STATES MAGISTRATE JUDGE